IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JUN 2 4 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CONCERNED ROSEBUD AREA CITIZENS,
P.O. Box 153, White River, SD 57579,

PRAIRIE HILLS AUDUBON SOCIETY OF
WESTERN SOUTH DAKOTA
P.O. Box 792, Rapid City, SD 57709,

SOUTH DAKOTA PEACE AND JUSTICE CENTER,
Box 405, Watertown, SD 57201,

HUMANE FARMING ASSOCIATION,
76 Belvedere St., Suite D, San Rafael, CA 94901,

Plaintiffs,

v.

GALE NORTON,
Secretary of the Interior
U.S. Department of the Interior
1849 C Street, NW, Washington, DC 20240,

JAMES CASON,
Acting Assistant Secretary – Indian Affairs
U.S. Department of Interior
1849 C Street, NW, Washington, DC 20240,

Defendants.

CASE NUMBER 1:05CV01275

JUDGE: James Robertson

DECK TYPE: Administrative Agency Review

DATE STAMP: 06/24/2005

**COMPLAINT FOR DECLARATORY RELIEF**

INTRODUCTION

1. This action seeks relief from the Department of Interior, Bureau of Indian Affairs' (collectively "BIA") approval – and subsequent re-approval – of a lease between Bell Farms/Sun Prairie (hereinafter Sun Prairie) and the Rosebud Sioux Tribe (hereinafter "the Tribe") for construction of a large hog production facility on land held in trust by the BIA for the benefit of

the Tribe and its members in Mellette County, South Dakota. The BIA initially approved the lease in 1998; this was done in violation of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., and the Administrative Procedure Act (APA), 5 U.S.C. §§ 702-706, because (1) the BIA failed to prepare an environmental impact statement (EIS) prior to making a final agency decision on the matter and (2) the environmental assessment (EA) that it did prepare and approve was inadequate under NEPA to support BIA's "finding of no significant impact" ("FONSI").

2. After Plaintiffs sued in this Court in 1998 (D.D.C. Civ. No. 98-2841 (JHG)) challenging defendants' compliance with NEPA, the BIA acknowledged that it had violated NEPA, rescinded its approval of the lease, and ordered a halt to construction of the factory hog farm project.

3. After six years of further factual developments (summarized below), including (a) further litigation in the District Court for the District of South Dakota and (b) construction of two of the thirteen planned units of the factory hog farm, BIA recently "vacated" its 1999 recision of the lease approval. In May of this year, BIA reinstated its approval of the lease. However, Defendants have neither prepared an EIS, revised the 1998 EA, nor taken any other steps to comply with NEPA. The recent re-approval of the lease is therefore illegal.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 5 U.S.C. §§ 701-706 and 28 U.S.C. §§ 1331 and 28 U.S.C. § 2201-2202. Venue is proper in this district under 28 U.S.C. § 1391.

## PARTIES

5. Concerned Rosebud Area Citizens, Inc. (CRAC) is a nonprofit corporation – organized in and registered with the State of South Dakota – for the purpose of gathering and disseminating information regarding the development of large scale poultry or livestock confinement operations, and their effects on the environment. CRAC is an environmental organization that also works actively to eliminate and or mitigate the adverse effects of such facilities on people and the environment. Some CRAC members are also members of the Rosebud Sioux Tribe.

6. CRAC's members live on or near the Rosebud Indian Reservation and live, work, regularly drive through and/or recreate on the lands surrounding the proposed factory hog production facility. Many CRAC members live in the town of White River, which is approximately five miles from one of the two hog production sites built by Sun Prairie. The proposed facility is and will continue to pollute their air and water, release odors, and degrade and despoil the landscape where they live and recreate. Large scale hog production operations on the Rosebud Reservation have diminished and will continue to diminish their quality of life and the ecological integrity of the natural surroundings, as well as the physical, cultural, economic, and social values which are precious to the area and to the culture of these CRAC members. Among the members of CRAC whose interests will be concretely and directly affected by the hog farm are the following:

7. George England. Mr. England is a member of Concerned Rosebud Area Citizens ("CRAC") and the Humane Farming Association, and is a co-owner of the ranch where he

raises cattle and lives with his family. The England ranch is located five miles from the "Cottonwood Grove" factory hog farm site, and only one mile from the "Grassy Knoll" site.

8. Foul odors from the hog farm travel to the England ranch approximately five or six times per month. On these days, it is always unpleasant to be outdoors, whether the intent is to work or play. When possible, the family retreats indoors and closes all the doors and windows. On hot summer days, this means that they must run the air conditioning when they otherwise might not have to. Therefore, as a direct result of the construction and operation of the factory hog farm, Mr. England has suffered physical harm to his olfactory senses, harm to his aesthetic senses, disruption of normal ranch and family life, and economic damage.

9. Marvin Starkjohann. Mr. Starkjohann is a member of CRAC. He owns and lives on a ranch that is located a mere three-quarters of a mile from the Cottonwood Grove hog farm site. Both of Sun Prairie's hog farm operations are directly visible from his home; the Cottonwood Grove site, because of its size and proximity, is an enormous eyesore that visually confronts anyone standing in the living room or yard of the Starkjohann home. At night, the outdoor lights on the gleaming metal barns of the hog farm send a great amount of glare directly into the Starkjohann home. This makes it largely impossible to enjoy the evening moon and stars, and the peacefulness of the rolling hills of the Rosebud area.

10. Approximately 10 times per month, the direction of the wind is such that Mr. Starkjohann is forced to suffer the acrid, offensive, and sometimes nauseating odors from the hog farm. On these days, life itself becomes unpleasant. The value of the Starkjohann property, on information and belief, has declined substantially since the Cottonwood Grove

site began operations, as the Starkjohann property is no longer salable for residential purposes. Accordingly, Mr. Starkjohann has been denied his right to the peaceful enjoyment of his ranch home. He has suffered grievous injury to his aesthetic, environmental and financial interests.

11. Plaintiff South Dakota Peace and Justice Center (SDP&J) is an interfaith membership organization with 500 indigenous and non-indigenous members in South Dakota and Indian Country. Members of SDP&J live in or near the factory hog farm. Those members have cultural, aesthetic, business, environmental and/or recreational interests that are being and will be directly and adversely affected by discharges of odors and pollution from the proposed hog production facility. All SDP&J members, local and non-local, will be adversely and directly affected by the hog farm as it may cause irreparable damage to the Earth and to indigenous culture. Members' cultural values and the goals of the Peace and Justice Center, which include respectful treatment of animals and decent working conditions for people, are being and will be compromised by the operation of this facility.

12. Plaintiff Prairie Hills Audubon Society of Western South Dakota ("PHAS") is a South Dakota non-profit corporation with 238 members in western South Dakota. Its purpose is to engage in educational, scientific, literary, historical, and charitable pursuits that will educate the public about, protect, and restore the environment and our natural heritage. PHAS conducts much of its work through education, advocacy, promotion of public participation in government decision-making, and cooperative efforts with state and federal agencies intended to ensure compliance with environmental laws.

13. Members of PHAS use the waters of South Dakota, including those downstream from the proposed facility, for drinking, swimming, canoeing, observation, research, fishing, photography, aesthetic appreciation, and/or other recreational purposes. They recreate outdoors and have an interest in the preservation of our natural heritage, especially wildlife. They will continue using South Dakota's waters and lands for these purposes in the future.

14. Plaintiff Humane Farming Association (HFA), a non-profit corporation organized and incorporated in the State of California, is the nation's largest organization dedicated to the protection of both farm animals and human health. HFA has over 180,000 members nationwide, of which several reside in the Rosebud area, including George England and Marvin Starkjohann. HFA investigations have documented violations of federal and state laws in factory hog farms not unlike the one at issue in this case. HFA has also conducted hidden-camera investigations of both units at Rosebud; these investigations have exposed hostile conditions for workers and animals alike inside both facilities.

15. Members of HFA reside and work in the Mellette County, South Dakota; they use the water and land surrounding the proposed site for recreation as well as business ventures. These members of HFA will be directly and adversely affected by pollution emanating from the proposed hog production facility. Moreover, HFA's members believe strongly in humane treatment of farm animals and they are opposed to large-scale, commercial, exploitative use of animals for food production. The proposed hog facility is contrary to their ethics and sensibilities and, if constructed, will harm their aesthetic interest in the humane treatment of farm animals.

16. Defendant Gale Norton is sued in her official capacity as Secretary of Interior. As Secretary of Interior, she has ultimate responsibility and authority for the implementation of

NEPA with respect to the agency's responsibilities to Native American tribes, cultures, and lands. The Bureau of Indian Affairs is the administration within the Department with principal responsibility for overseeing the day-to-day inter-governmental relations between the tribal nations and the United States, as well as for approving leases of tribal trust land such as is the subject of this action.

17. Defendant James Cason is sued in his official capacity as Acting Assistant Secretary – Indian Affairs within the Department of Interior. In this position, Mr. Cason has responsibility for management of the BIA, and the implementation of NEPA with respect to the factory hog farm on tribal trust land. He also has a duty to safeguard the interests of tribal people and the integrity of tribal lands.

STATEMENT OF FACTS

18. This action seeks relief from the Department of Interior ("DOI"), Bureau of Indian Affairs' ("BIA") approval – and subsequent re-approval – of a lease between Bell Farms/Sun Prairie (hereinafter Sun Prairie) and the Rosebud Sioux Tribe (hereinafter "the Tribe") for construction of a large hog production facility on land held in trust by the BIA for the benefit of the Tribe and its members in Mellette County, South Dakota. The BIA initially approved the lease in September, 1998.

19. The four plaintiffs that are bringing the instant suit previously filed suit in this Court in 1998 (D.D.C. Civ. No. 98-2841 (JHG)) challenging defendants' compliance with NEPA and the APA in connection with BIA approval of the lease. Plaintiffs alleged that the environmental assessment ("EA") that had been prepared in connection with the lease approval did not fully comply with NEPA, and that a full environmental impact statement ("EIS") was required.

20. In that case the government moved to transfer the case to the District Court for the District of South Dakota. That motion was denied by this Court. *Concerned Rosebud Area Citizens, et al, v. Babbitt*, 34 F. Supp. 2d 775 (D.D.C. 1999), copy attached as Exhibit A.

21. Within months after that suit was filed, BIA agreed with the plaintiffs that the EA was legally defective and that BIA was not in compliance with NEPA. Then-Assistant Secretary Gover, predecessor to defendant Cason, stated in a letter dated January 27, 1999, that "the EA does not fully comply with NEPA...." He stated further that the "Lease is, and always has been, void for failure to fully comply with NEPA."

22. BIA rescinded its approval of the lease on January 27, 1999, and ordered that further construction of the project be halted. The parties stipulated to a dismissal of the suit without prejudice. A copy of the stipulation is attached as Exhibit . Attorneys fees and costs were paid by the government.

23. Related litigation was subsequently brought by Sun Prairie and the Tribe in the District Court for the District of South Dakota. Defendants were enjoined from interfering with construction of the project; that injunction was later vacated by the Eighth Circuit Court of Appeals. Another, related suit was filed by Sun Prairie in 2002. That litigation was finally resolved by settlement in May, 2005.

24. In the May, 2005 settlement agreement, defendant BIA "vacated" its January 27, 1999 recision of its 1998 approval of the lease. See § 9(a). In effect, this action re-approved the lease. However, no steps have been taken that effectively bring Defendants into compliance with NEPA.

25. Defendants have never revised the legally defective 1998 EA.

26. Defendants have never prepared an EIS for the project.

27. The factory hog farm project is partially constructed. Two units out of the planned 13 units were constructed and went into commercial operation by 2002.

28. The factory hog farm is located on land held by the BIA in trust for the Rosebud Sioux Tribe in Mellette County, South Dakota. On two sites it spreads over hundreds of acres. It houses up to 96,000 pigs at any one time.

29. The project is creating, and will create, substantial adverse effects on the environment.

30. A hog produces as much as three times the amount of waste that a human being produces. A hog production facility of this size, with 96,000 or more hogs, therefore produces waste equivalent to or greater than a city half the size of Washington, D.C.. This waste is being, and will be discharged into surface impoundments on the Rosebud Reservation, from which it may be discharged, intentionally or accidentally, into groundwater and nearby water bodies, including nearby the Little White River.

31. The huge quantities of animal waste discharged to the land surface is creating and will create noxious and dangerous air pollution, including toxic gasses such as ammonia, and terrible odors.

32. The animal waste is accumulating and will continue to accumulate in the surface impoundments on site. Defendants have neither analyzed the environmental impacts of this waste disposal nor developed a plan for addressing it.

33. Hogs living in confined, large-scale facilities such as this are highly susceptible to disease and suffer high mortality rates. The large amount of animal tissue and carcasses from these facilities creates an additional waste problem and pollution hazard.

CLAIMS FOR RELIEF

COUNT I: Violation of NEPA and the APA by Failing to Prepare an EIS

34. Plaintiffs reallege and incorporate by reference paragraphs 1-33.

35. Federal agencies are required to complete an EIS for any a major federal action significantly affecting the quality of the human environment. 42 U.S.C. § 4332(C).

36. Approval and re-approval of the lease each constitute major federal action; the facility is causing and will cause environmental effects that are significant for purposes of NEPA, and therefore Defendants were required to prepare an EIS.

37. Their failure to do so constitutes arbitrary and capricious action, in violation of 5 U.S.C. § 706.

COUNT II: Violation of NEPA and the APA by Preparing an Inadequate EA

38. Plaintiffs reallege and incorporate by reference paragraphs 1-33.

39. NEPA requires that:

> all agencies of the Federal Government shall study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources.

42 U.S.C. § 4332(2)(E). This requirement applies to the preparation of EAs and EISs.

40. BIA's EA for the facility does not consider a sufficient range of alternatives. The EA also fails to examine adequately the impacts, including the cumulative impacts, of the facility's construction and operation on the environment, in violation of NEPA.

41. Their failure to prepare an adequate EA constitutes arbitrary and capricious action, in violation of 5 U.S.C. § 706.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the relief below:

1. For a declaratory judgment to the effect that Defendants violated NEPA by failing to issue an EIS or, in the alternative, failing to prepare an EA that satisfies NEPA's requirements.

2. For a declaratory judgment setting aside Defendants' approval and re-approval of the lease until such time as Defendants comply with the requirements of NEPA and the APA.

3. For an order awarding Plaintiffs their costs of litigation, including reasonable attorney's fees; and

4. For such other and further relief as this Court may deem appropriate.

Respectfully submitted,

Dated: June 24, 2005

James B. Dougherty, Esq.
D.C. Bar #939538
709 3rd St. SW
Washington DC 20024
tel.:(202) 488-1140
fax: (202) 484-1789

Counsel for Plaintiff