IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CONCERNED ROSEBUD AREA CITIZENS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 05-CV-01275 |
| GALE NORTON, et al., | ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE

Defendants Gale Norton, as Secretary, United States Department of the Interior, and James Cason, Associate Deputy Secretary, United States Department of the Interior (collectively "defendants") hereby move for dismissal or, alternatively, a transfer of venue pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). The reasons supporting this motion are set forth in the accompanying Memorandum of Points and Authorities. Counsel for defendants has conferred with counsel for plaintiffs, who has stated that plaintiffs do not consent to the motion and anticipate that they will oppose it.

Dated: August 19, 2005                    Respectfully submitted,

Kelly A. Johnson
Acting Assistant Attorney General
Environment & Natural Resources Division


_____/S/_____
John H. Turner, Jr.
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division

Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, D.C. 20026-4378
Street Address:
601 D Street, N.W. Suite 3507
Washington, DC 20004
Telephone: (202) 305-0269
Facsimile: (202) 305-0271
E-mail: john.turner@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONCERNED ROSEBUD AREA CITIZENS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 05-CV-01275 |
| ) | |
| GALE NORTON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE

Plaintiffs Concerned Rosebud Area Citizens, Prairie Hills Audubon Society of Western South Dakota, South Dakota Peace and Justice Center, and the Humane Farming Association (collectively "plaintiffs") seek judicial review pursuant to the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA") of the Department of the Interior, Bureau of Indian Affairs' ("BIA's") issuance of a lease, as modified by a consent judgment approved on May 19, 2005 by the U.S. District Court for the District of South Dakota, Central Division,  between Bell Farms/Sun Prairie ("Sun Prairie") and the Rosebud Sioux Indian Tribe ("Tribe").  Complaint ¶¶ 1-4; *Order and Judgment by Consent*, Sun Prairie v. Cason, No. 02-3030-RHB (D.S.D. May 19, 2005) (copy attached).  Plaintiffs' complaint was prompted by the entry by Honorable Richard H. Battey of the consent judgment, which the plaintiffs, then intervenor-defendants in the litigation Sun Prairie v. Cason, did not oppose.[1]  The lease, as

---

[1] See the Order, which notes that the "motion [to enter the consent judgment] was served by U.S. mail and electronic notice upon counsel for intervenor-defendants. As of the date of this Order

revised by the consent judgment, requires Sun Prairie to make financial payments to the Tribe in connection with the operation of two[2] animal feeding operations located on land held in trust for the Tribe on its reservation. In addition, the amended lease mandates that the operator comply with all applicable environmental standards, implement specified operational environmental controls, and develop an approved environmental closure plan, which will include agreed-upon financial security arrangements, detail closure procedures, and require post-closure monitoring. *See* Complaint, ¶ 27; Judgment by Consent, ¶ 7. The judgment specifically provides that the BIA may review prior NEPA documentation and supplement previous analyses, if appropriate. Judgment by Consent, ¶ 9. It further states that the District of South Dakota will retain jurisdiction over any future challenges involving the lease. Id. ¶ 12.

The plaintiffs have filed their complaint in a court that lacks venue rather than the one that retained jurisdiction over issues concerning the lease. This court should, pursuant to 28 U.S.C. § 1406(a), dismiss the lawsuit. Alternatively, this court should transfer to the District of South Dakota in accordance with 28 U.S.C. § 1404(a).

**PROCEDURAL HISTORY; THE RECENT CONSENT JUDGMENT AND ORDER**

The recently approved and unopposed consent judgment, over which the District of South Dakota maintains jurisdiction, concluded the third lawsuit challenging the 1998 approval of a lease between Sun Prairie and the Tribe to operate hog farm facilities on the Reservation. In 1998, the Tribe and Sun Prairie finalized a lease for the development of 13 sites.

---

intervenor-defendants have not join[ed] in, nor objected to, the parties' motion. . . ." Id.

[2] The original lease, further described hereinbelow, would have allowed Sun Prairie to operate 13 sites on tribal land.

## A. The Initial Challenge

The BIA approved the lease on September 16, 1998, prompting a challenge by the current

plaintiffs, who alleged in this Court a violation of NEPA. On January 27, 1999, then-Assistant

Secretary-Indian Affairs Kevin Gover sent the Tribe a letter which stated that the BIA's approval

of the lease was void for failing to comply with NEPA. The parties then entered into a joint

stipulation of dismissal, and this Court dismissed the case without prejudice. No discovery had

been conducted or preliminary rulings issued by this court. Concerned Rosebud Area Citizens v.

Babbitt, 34 F. Supp. 2d 775 (D.D.C. 1999).

## B. Challenge in the District of South Dakota

On February 3, 1999, Sun Prairie brought suit in the District of South Dakota,

challenging  the Interior Department's decision to void the lease. The Court enjoined the

Department from taking any action that would interfere with construction of the project.

Rosebud Sioux Tribe v. Gover, 104 F. Supp. 2d 1194 (D. S.D. 2000). During the period of the

injunction, Sun Prairie completed and began operating two hog farm sites. However, on appeal,

with Sun Prairie as the sole plaintiff, the Eighth Circuit Court of Appeals dismissed the case on

the grounds that Sun Prairie lacked prudential standing to enforce statutes intended to protect

Indian interests. Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031 (8th Cir. 2002), *cert. denied*,

537 U.S. 1188 (2003).

Sun Prairie commenced the recently-settled action on August 14, 2002, against the

United States and the Tribe. Against the United States, the complaint sought equitable and

declaratory relief, in particular alleging a violation of procedural due process and a taking of Sun

Prairie's property interest. Judgment ¶ 2. The present plaintiffs intervened as defendants. Id. ¶ 3.

The United States and the Tribe moved to dismiss Sun Prairie's complaint on the grounds of sovereign immunity and lack of subject matter jurisdiction. Id. The court dismissed seven of the counts but held that it had jurisdiction, under the theory that the lease, as initially approved by the BIA, was still valid. In a June 5, 2003, decision, the court reasoned that Sun Prairie's right to procedural due process had been denied, stating that Sun Prairie had a constitutionally protected interest in the lease and that the BIA did not provide Sun Prairie proper notice and an opportunity to cure alleged NEPA deficiencies prior to termination. Id.

Thereafter, the parties engaged in concerted efforts in May 2005 to negotiate a settlement, resulting in the consent judgement approved by Judge Battey. It brought closure to the uncertainty that had existed since 1998 regarding the 13 leased sites. The consent judgment provides that Sun Prairie will return control of the 11 undeveloped sites to the Tribe. Id. ¶¶ 3, 6. Regarding the two remaining sites, the terms in the judgment are vastly more favorable to the Tribe than under the initial lease. For example, the term of the modified lease will be limited to a period of 15-20 years. Id. ¶ 4. Sun Prairie will make fixed annual payments of $60,000 to $75,000 per site for use of the land. Id. ¶ 5. Sun Prairie will also pay the Tribe for water usage, which arguably was not required under the initial lease, including a specified payment for groundwater where applicable. Id. Sun Prairie will also make a lump sum payment for past water usage. Id. The judgment waived a provision in the original lease that required the Tribe to reimburse Sun Prairie for taxes paid to local governments, id. ¶ 9, and affords the Tribe the option of purchasing the facilities at the close of the lease on very favorable terms. Id. ¶ 4.

The judgment also requires that Sun Prairie comply with any otherwise applicable environmental standard and develop, in close consultation with and subject to the approval of the

- 4 -

Tribe and federal agencies, a nutrient management and sampling plan, many aspects of which will parallel if not exceed the terms of the U.S. Environmental Protection Agency's General NPDES Permit for Large-Scale Animal Feeding Operations, 68 Fed. Reg. 7176 (Feb. 12, 2003) (codified at 40 C.F.R. Parts 9, 122, 123, 412). Judgment, ¶ 7. Among the requirements are (1) an environmental closure plan, which will specify closure procedures and include agreed-upon financial security for environmental impact, (2) protective measures for the active management, both during operation and after facility closure, of nutrients removed from environmental control systems that are currently in use at the sites, and (3) monitoring and sampling, again both during facility operation and after closure. Id.

Importantly, the consent judgment provides that: (1) the District of South Dakota will retain jurisdiction over any future challenges involving the lease throughout its term, including any extensions, id. ¶ 12(a), (c), "for the purpose of ensuring compliance and enforcing the provisions of [the] Consent Judgment", id. ¶ 12(a); and (2) the BIA reserves the right to review prior NEPA documentation and to supplement it within "a reasonable time period." Id. ¶ 9(c).[3] The plaintiffs had ample opportunity to object to any aspect of the settlement agreement, and chose not to do so.

## ARGUMENT

---

[3] "Nothing in this Consent Judgment and Order modifies, affects, expands, or limits (i) the existing rights or responsibilities, if any, of the Department of Interior under applicable NEPA laws and regulations to review and, if necessary, supplement any existing NEPA analysis, within a reasonable time period, or (ii) the rights and objections, if any, of any other party with respect to any such NEPA action." Id.

When a plaintiff files an action in the wrong venue, 28 U.S.C. § 1406(a) obligates courts to "dismiss, or if it be in the interest of justice, transfer such case" to the proper venue. The consent judgment clearly states that the District of South Dakota shall maintain jurisdiction over any challenges involving the lease agreement, as modified. Whether additional NEPA analysis is necessary, or such analysis as may be conducted is adequate as a matter of law, is an issue that is inextricably linked to the lease as revised by the consent judgment. Moreover, as part of the judgment the BIA reserves the right to review and supplement the previously prepared NEPA documentation, within a "reasonable time period."[4] Like the plaintiff in Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 760 F.2d 312 (D.C. 1985), the current litigants, full participants in the South Dakota litigation who selected not to voice opposition to the settlement or to the South Dakota court's continuing jurisdiction, have "chosen the District of Columbia simply to suit [their] own convenience." Id. at 317. Their forum choice is "unreasonable", id., contrary to the explicit terms of the consent judgment and order, and no more "plausible", id., than the unsuccessful effort by Noxell Corp. This Court should dismiss this action, finding that it is not "in the interests of justice" to transfer the claim to the District of South Dakota.[5] Doing so

---

[4] What constitutes a "reasonable time period" lies within the province of the court that reviewed and entered the consent judgment and retains jurisdiction over the matter. Moreover, until a reasonable time passes, it is doubtful that a challenge would be ripe.

[5] "If venue is improper, transfer, if at all, *must* be under § 1406(a)." 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3844, at 332 (2d ed. 1986). Transfer, as opposed to dismissal, may be appropriate in certain instances not present here, such as when refiling the court of proper jurisdiction would be barred by the applicable statute of limitations, or pursuant to a venue statute such as 42 U.S.C. § 2000e-5(f)(3) (Title VII) which specifically references § 1406(a) as a method for transferring. *See, e.g.*, Burnett v. New York Central R.R. Co., 380 U.S. 424 (1965); Sinclair v. Kleindienst, 711 F.2d 291 (D.C. Cir. 1983); James v. Booz-Allen, 227 F. Supp. 16 (D.D.C. 2002). This case, however, is not an example of a clerical error in filing, *see, e.g.*, Reliance Standard Life Ins. Co. v. Matula, Slip Copy, 2005 WL 1676802

will not automatically preclude the plaintiffs from "filing a new action in a place of proper venue." Id. at 317 n.9.

Alternatively, in the event that this Court determines that § 1406 is inapplicable (either as to dismissal or transfer), this Court should transfer pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice" a civil action may be transferred "to any other district or division where it might have been brought." As a threshold matter, it is beyond dispute that in this civil action against a governmental agency and government officials, the events giving rise to plaintiffs' lawsuit occurred in South Dakota, and all of the plaintiffs in this action are organized in or have members who are resident there; therefore, venue is appropriate in the United States District Court for the District of South Dakota. 28 U.S.C. § 1391(e).[6]  Further, given the absence of any meaningful connection between this matter and the District of Columbia (and the presence of a countervailing connection between the plaintiffs and South Dakota), and the strong public interest in having issues of local concern to South Dakota citizens resolved in a court in South Dakota, this matter should be transferred to the District of South Dakota.

---

(W.D.Wis. 2005), but rather a deliberate attempt to avoid the South Dakota forum. In such cases, district courts have discretionary authority to dismiss, rather than to transfer. *See, e.g.*, Pacas v. Showell Farms, Inc., 83 F.3d 415 (4th Cir. 1996) (not an abuse of discretion to dismiss when plaintiff could reasonably foresee that the chosen forum was improper); Nichols v. G.D. Searle & Co., 991 F.2d 1195 (4th Cir. 1993).

[6] That district is "the judicial district in which... a substantial part of the events or omissions giving rise to the claim occurred." Id. § 1391(e)(2).

- 7 -

**A.**    **<u>There Is No Material Connection Between this Matter and the District of Columbia</u>**.

In determining whether to grant a motion for a transfer of venue, a court is guided by several factors relating to the private and public interests at stake. <u>Trout Unlimited v. United States Dep't of Agric.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996). Relevant private interests include the forum choices of both plaintiff and defendant, the location in which the claim arose, the convenience of the parties, the convenience of witnesses, and the ease of access to sources of proof. <u>Id</u>.

While a plaintiff's choice of forum is entitled to some weight, "numerous cases in this Circuit recognize that such a choice receives substantially less deference where the plaintiffs, as here, neither reside in, nor have any substantial connection to, that forum." <u>DeLoach v. Philip Morris Cos.</u>, 132 F. Supp. 2d 22, 24 (D.D.C. 2000); <i>see also</i> <u>Trout Unlimited</u>, 944 F. Supp. at 17 (showing that defendants must make to overcome plaintiff's choice of forum "is lessened when the 'plaintiff[s'] choice [of forum] has no factual nexus to the case'") (citation omitted; alteration in original); <u>Armco Steel Co. v. CSX Corp.</u>, 790 F. Supp. 311, 323 (D.D.C. 1991) ("Deference is greatly diminished when the activities have little, if any, connection with the chosen forum.") (citation omitted). By the same token, the showing the defendants must make in support of its motion "is lessened . . . where, as in this case, transfer is sought to the forum with which the plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state." <u>Trout Unlimited</u>, 944 F. Supp. at 17. Because all of the plaintiffs are organizations whose members reside, exclusively or in part, in South Dakota, the facilities that are the subject matter of the lawsuit is located there, the challenged licensing decision was initially made by the Aberdeen, South Dakota, office of the BIA, any additional NEPA analysis needed will be performed in South Dakota, and the license as revised was the subject of a consent judgment

reviewed and approved by the District of South Dakota, plaintiffs' choice of forum merits little deference.

In contrast, the only connections between plaintiffs' claims and the District of Columbia are that (1) the law firm representing plaintiffs has an office here, and (2) the Department of Interior's headquarters office is located here. As to the first "connection," the location of counsel is "virtually irrelevant" in deciding a motion to transfer venue. DeLoach, 132 F. Supp. 2d at 26 n.5; see also Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52 n.7 (D.D.C. 2000) ("The location of counsel 'carries little, if any, weight in an analysis under [section] 1404(a)'") (citation omitted).

As to the second "connection" noted above, the location of the Department's headquarters office may provide a basis for venue in the District of Columbia under 28 U.S.C. § 1391(e), but there is no meaningful connection between the District of Columbia and the subject matter of this case. The license at issue was initially processed and approved by the Aberdeen, South Dakota office of the BIA. Not only is at least part of the administrative record located there, but the entire public process attendant to the BIA's original review of the lease at issue, and of the NEPA analysis that previously was performed, occurred in South Dakota.[7] Government employees at the BIA's offices in the District of Columbia did not play an active or

---

[7] Because judicial review in a NEPA case will be based solely on the administrative record, the location of the record is significant, whereas the issue of witness convenience is largely irrelevant. See, e.g., Sierra Club v. Flowers, 276 F. Supp. 2d 62, 69 (D.D.C. 2003); Airport Working Group v. United States Dep't of Defense, 226 F. Supp. 2d 227, 231 (D.D.C. 2002) (citing Trout Unlimited, 944 F. Supp. at 18). However, in the unlikely event that witnesses are necessary for proceedings in this matter, most of the BIA officials likely to have relevant knowledge relating to this matter are found in South Dakota, and all plaintiff advocacy groups are either exclusively based in or have members in South Dakota.

significant role in the Aberdeen office's decision-making process in the crafting of the initial license and in the preparation of the original NEPA analysis. The same will be true with regard to any further NEPA analysis conducted pursuant to the consent judgment. Analyses of the extent to which additional NEPA review is required, as well as any subsequent additional work, will be conducted in South Dakota. Thus, the fact that the BIA headquarters is located in the District of Columbia should not be given any weight in determining whether to transfer this case. *See* Sierra Club v. Flowers, 276 F. Supp. 2d 62, 67-68 (D.D.C. 2003) (fact that defendant agencies had offices in D.C. not dispositive where Federal officials in Florida made final decision on permits); Airport Working Group v. United States Dep't of Defense, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (any role played by officials in D.C. was overshadowed by fact that permitting process, including public comments, occurred in California). Rather, due to the lack of any meaningful ties to this jurisdiction, the Court "must be especially cautious in allowing [this case] to remain in the District of Columbia." Airport Working Group, 226 F. Supp. 2d at 230-31 (citing Trout Unlimited, 944 F. Supp. at 17). *See also* Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002) (mere involvement on the part of federal agencies or some federal officials based in Washington, D.C. is not determinative). Each and every decision that has or may be made to some extent by one or more officials in a government agency headquartered in Washington, D.C. need not be–indeed, ought not be--litigated in the District of Columbia. *See, e.g.*, Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993) ("Courts in the [District of Columbia] circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of

Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere.").

Finally, this recent challenge is in its earliest stage of litigation. The defendants have not yet filed an answer and no other motions are pending before this Court. Therefore, the case is at an appropriate stage for transfer. *See* Trout Unlimited, 944 F. Supp. at 19 (granting motion to transfer venue where court had neither dealt with other issues in suit nor familiarized itself with merits; since case was in earliest stages, there would be no delay associated with transferee court having to familiarize itself with case). The District of South Dakota is well-versed in the subject matter of the lawsuit. This Court's prior experience with the parties and this controversy was short-lived and involved no rulings on procedural or substantive matters other than the entry, within a matter of days after the filing of the lawsuit, of a joint motion to dismiss. As described above, the farm sites have been the subject of litigation in South Dakota and before the Eighth Circuit Court of Appeals for a number of years, and resolution of the current issue depends in part of the outcome of each of those causes. As this court accurately remarked, in transferring a case to another district,

> [t]he controversy that lies at the center of this case...has a history that involves litigation conducted within the District of Kansas and in the Tenth Circuit. The intervention of a District of Columbia court that is neither part of that history nor thoroughly informed of it seems inappropriate.

Wyandotte Nation v. NIGC, No. CV-04-0513 (D.D.C. Apr. 2, 2004) (Order).

**B.     The Interest in Deciding Local Controversies at Home Outweighs the Lack of Any**
<u>**Meaningful Connection to the District of Columbia**</u>.

The interests of justice are of paramount significance and also favor transfer of this

matter to South Dakota.  *See* <u>Trout Unlimited</u>, 944 F. Supp. at 19.  As recognized by the U.S.

Supreme Court, there is a compelling interest in deciding local controversies at home:

> In cases which touch the affairs of many persons, there is reason for holding the trial
> in their view and reach rather than in remote parts of the country where they can
> learn of it by report only. There is a local interest in having localized controversies
> decided at home.

<u>American Dredging Co. v. Miller</u>, 510 U.S. 443, 448 (1994) (*citing* <u>Gulf Oil Corp. v. Gilbert</u>,

330 U.S. 501, 508-09 (1947)); *see also* <u>Trout Unlimited</u>, 944 F. Supp. at 19 (citations omitted).

"This policy rationale applies equally to the judicial review of an administrative decision which

will be limited to the administrative record."  <u>Id</u>. (citation omitted).  Suits concerning matters

such as potential environmental impacts should be resolved in the forum that is most convenient

for "the people whose rights and interests are in fact most vitally affected by the suit."  <u>Id</u>.; *see*

*also* <u>Shawnee Tribe v. United States</u>, 298 F. Supp. 2d 21, 26 (D.D.C. 2002) ("What the Court

finds to be the most persuasive factor favoring transfer of this litigation . . . is the local interest in

deciding a sizeable local controversy at home"); <u>DeLoach</u>, 132 F. Supp. 2d at 26 (noting that

"most persuasive factor" supporting transfer of venue to North Carolina was fact that

"[p]laintiffs' allegations are far more likely to constitute a matter of great public concern to the

citizens of North Carolina than to the citizens of the District of Columbia") (citation omitted).[9]

---

[9] *See also* <u>Valley Cmty. Preservation Comm'n v. Mineta</u>, 231 F. Supp. 2d 23, 47 (D.D.C. 2002)
(granting motion for change of venue in part because "the resolution of this action will have its
most profound impact on New Mexico residents who live in the area of the proposed [highway]
construction project"); <u>Airport Working Group</u>, 226 F. Supp. 2d at 231 (granting motion for
change of venue where "disposition and future use of [former Marine Corps property] will have

It is evident from plaintiffs' complaint that the issues raised by plaintiffs will be of concern to the citizens of South Dakota, but not to those of the District of Columbia. Taking plaintiffs' complaint at face value, the people whose rights and interests are in fact most vitally affected by the suit are located entirely outside the District of Columbia. The challenged license authorizes activities on land within an Indian reservation located entirely within South Dakota. Complaint, ¶ 1. The license was initially processed and approved by a local office of the BIA, following a lengthy environmental review process conducted in South Dakota, which involved participation by South Dakota citizens. The threatened injuries plaintiffs allege include environmental impacts and impacts to individuals and properties in the immediate vicinity of the facilities, all within South Dakota. *See* id. ¶¶ 5-14, 28-33. These interests counsel in favor of transferring venue to South Dakota and outweigh any deference due to plaintiffs' choice of forum. *See* Gulf Oil Corp., 330 U.S. at 509 (localized controversies should be heard locally, where concerned citizens may closely follow the proceedings); American Littoral Soc'y v. U.S. Envtl. Protection Agency, 943 F. Supp. 548, 550-51 (E.D. Pa. 1996) (noting that interests of justice "most strongly recommend[ed]" transfer of water quality litigation from Pennsylvania to Delaware where disposition of case would "affect not only private citizens but also industries in the state of Delaware;" transferring case would not harm interests of parties involved, and would "bring the adjudication of this dispute to the venue directly affected by the interests at stake in this case").

───────────────

a profound effect on the local environment and the use of local resources"); Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 939 F. Supp. 1, 3 n.5 (D.D.C. 1996) (noting importance of allowing local citizens to attend and observe proceedings); Citizen Advocates For Responsible Expansion v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983) (stating that "justice requires that . . . localized controversies should be decided at home").

Given the absence of any meaningful connection between this matter and the District of Columbia, and the overwhelming connection between this matter and South Dakota, should this court not dismiss the lawsuit venue should be transferred to the United States District Court for the District of South Dakota.

## **<u>CONCLUSION</u>**

For the foregoing reasons, defendants respectfully request that the Court grant its motion to dismiss or, alternatively, to transfer venue.

Dated: August 19, 2005                              Respectfully submitted,


KELLY A. JOHNSON
Assistant Attorney General
Environment & Natural Resources Division


_____/S/_____
John H. Turner, Jr.
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, D.C. 20026-4378
Street Address:
601 D Street, N.W., Suite 3507
Washington, DC 20004
Telephone: (202) 305-0269
Facsimile: (202) 305-0271
E-mail: john.turner@usdoj.gov